# Exhibit B

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"); the State of North Carolina, by and through the North Carolina Office of the Attorney General (collectively, the "Governments"); Defendant Codey Brown ("Bown"); and David A. Majure, and Carla C. Majure (the "Relators"), and hereafter collectively referred to as "the Parties," through their authorized representatives.

RECITALS

A. Defendant Codey Brown worked for a business entity that managed the business operations of a group of healthcare practices referred to as Carolina Comprehensive Health Network, PA that had offices in multiple locations in the Western District of North Carolina as well as other locations in North Carolina.

B. On November 15, 2015, David A. Majure and Carla C. Majure filed a *qui tam* action in the United States District Court for the Western District of North Carolina captioned *United States ex rel. David A. Majure, M.D., Carla C. Majure v. Carolina Comprehensive Health Network, PA, et al.* (Case Number 15-cv-134) pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b).[1] Relators alleged, among other things, that agents of Carolina Comprehensive Health Network, PA conducted medically unnecessary diagnostic testing, urine drug tests and submitted claims for services not rendered. The United States and the State of North Carolina intervened for purposes of settlement on August 25, 2020.

---

[1] On March 25, 2016, Cynthia Smith and Melanie Childress filed a *qui tam* action in the United States District Court for the Middle District of North Carolina captioned *United States ex rel. Cynthia Smith, and Melanie Childress v. Carolina Comprehensive Health Network, PA, et al.* (Case Number 16-cv-234).

C. The Governments contend that Brown submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

D. The Governments contend that they have certain civil claims against Brown arising from the submission of claims for unnecessary diagnostic procedures including: 1) positional nystagmus testing (CPT code 92542); 2) rotational axis testing (CPT codes 92546 and 92547); 3) nerve conduction testing (CPT Codes 95907, 95908, 95909, 95910, 95911, 95912 and 95913); and 4) autonomous nervous system testing (CPT codes 95921 and 95922), from May 1, 2015 through November 30, 2015. That conduct is referred to below as the "Covered Conduct."

E. This Settlement Agreement is neither an admission of liability by Brown nor a concession by the Governments that their claims are not well founded.

F. Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Defendant Codey Brown shall pay to the Governments a total of $100,000 (the "Settlement Amount"), of which $50,000 is restitution. The $100,000 is inclusive of interest at a rate of 1.25 percent per anum, the first payment shall be made on or before September 1, 2020 and shall thereafter be paid in accordance with Schedule A to this agreement. ,

2. Conditioned upon the Governments receiving each payment required by Schedule A of this agreement, the Governments shall make payments to Relators David and Carla Majure

2

in the amount of 22% of the payments received from Brown under this agreement as soon as feasible after the receipt of each payment.

3. Defendant Brown agrees that she is jointly and severally liable for the payment of $44,758.41 to Relators David and Carla Majure pursuant to § 3730(d)(1) for their reasonable expenses and their reasonable attorney's fees and costs. The single payment of $44,758.41 is due contemporaneously with the execution of this agreement by ACH Transfer to Bell, Davis & Pitt, PA.

4. Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and conditioned upon full payment of the Settlement Amount and subject to Paragraph 23, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Brown from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5. Subject to the exceptions in Paragraph 9 (concerning excluded claims) below, and conditioned upon full payment of the Settlement Amount and subject to Paragraph 23, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the State of North Carolina releases Brown from any civil or administrative monetary that the State of North Carolina has for the Covered Conduct under the North Carolina False Claims Act, N.C.G.S. §§ 1-605, *et seq.*, or the common law theories of payment by mistake, unjust enrichment, and fraud.

6. In the event that Brown fails to pay any amount as provided in Paragraph 1 within 10 business days of the date on which such payment is due, Brown shall be in default of her

payment obligations (Default). In the event of such Default, OIG-HHS may exclude Brown from participating in all Federal health care programs until Brown pays the Settlement Amount and reasonable costs as set forth in Paragraph 1, above. OIG-HHS will provide written notice of any such exclusion to Brown. Brown waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Brown wishes to apply for reinstatement, Brown must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Brown will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

7. Subject to the exceptions in Paragraph 8 and 9 below, and conditioned upon Brown's full payment of the Settlement Amount and subject to Paragraph 23, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release Brown from any civil monetary claim the Relators have on behalf of the Governments for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733 and N.C.G.S. §§ 1-605, *et seq*.

8. Notwithstanding the releases given in paragraphs 4, 5 and 7 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal healthcare programs;

  d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

  e. Any liability based upon obligations created by this Agreement;

  f. Any liability of individuals;

  g. Any liability for failure to deliver goods or services due; and

  h Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

9. Notwithstanding the releases given in paragraphs 4, 5 and 6 of this Agreement, or any other term of this Agreement, the following claims of the State of North Carolina are specifically reserved and are not released:

  a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code)

  b. Any criminal liability;

  c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal healthcare programs;

  c. Any liability to the State of North Carolina (or its agencies) for any conduct other than the Covered Conduct;

  d. Any liability based upon obligations created by this Agreement;

  e. Any liability of individuals;

  f. Any liability for failure to deliver goods or services due; and

  g. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

10. Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable

under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and N.C.G.S. § 1-609(c). Conditioned upon Relators' receipt of the payments described in Paragraph 2, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the Governments, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730 and N.C.G.S. § 1-609, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

11. Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release Brown from any liability to Relators arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) and N.C.G.S. § 1-610 for expenses or attorney's fees and costs.

12. Brown has provided sworn financial disclosure statements (Financial Statements) to the United States and the Governments have relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Brown warrants that the Financial Statements are complete, accurate, and current. If the Governments learn of asset(s) in which Brown had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the Governments learn of any misrepresentation by Brown on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $200,000 or more, the Governments may at their option: (a) rescind this Agreement and file suit or reinstate its suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Brown previously undisclosed. Brown agrees not to contest any collection action undertaken by the Governments pursuant to this provision, and immediately to pay the Governments all reasonable costs incurred in such an action, including attorney's fees and expenses.

13. In the event that the Governments, pursuant to Paragraph 9 (concerning disclosure of assets), above, opts to rescind this Agreement, Brown agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the Governments within 365 calendar days of written notification to Brown that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on November 15, 2015.

14. Brown waives and shall not assert any defenses Brown may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States and the State of North Carolina concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

15. Brown fully and finally releases the United States and the State of North Carolina, their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Brown has asserted, could have asserted, or may assert in the future against the United States or the State of North Carolina, their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' and State of North Carolina's investigation and prosecution thereof.

16. Brown fully and finally releases the Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Brown has asserted, could have asserted, or may assert in the future against the Relators, related to the Covered Conduct and the Relators' investigation and prosecution thereof.

17. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare and/or Medicaid contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier or any state payer or state contractor), related to the Covered Conduct; and Brown agrees not to resubmit to any Medicare/Medicaid contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

18. Brown agrees to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Brown, or her present or former agents in connection with:

    (1) the matters covered by this Agreement;

    (2) the Governments' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    (3) Brown's investigation, defense, and corrective actions undertaken in response to the Governments' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

    (4) the negotiation and performance of this Agreement; and

    (5) the payment Brown makes to the Governments pursuant to this Agreement and any payments that Brown may make to Relators, including costs and attorneys fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

  b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Brown, and Brown shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Brown to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

  c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Brown further agrees that within 90 days of the Effective Date of this Agreement he shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Brown or any of his subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Brown agrees that the Governments, at a minimum, shall be entitled to recoup from Brown any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

 Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The

Governments reserve their rights to disagree with any calculations submitted by Brown or any of his subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Brown or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

        d.      Nothing in this Agreement shall constitute a waiver of the rights of the Governments to audit, examine, or re-examine Brown's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

19.      Brown agrees to cooperate fully and truthfully with the Governments' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Brown shall encourage, and agrees not to impair, the cooperation of said individuals and entities, consistent with the rights and privileges of such individuals and entities. Brown further agrees to furnish to the Governments, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in her possession, custody, or control concerning any investigation of the Covered Conduct that she has undertaken, or that has been performed by another on her behalf.

20.      This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 21 (waiver for beneficiaries paragraph), below.

21.      Brown agrees that she waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

22.      Brown warrants that she has reviewed her financial situation and that she currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain

solvent following payment to the Governments of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Brown, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Brown was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

23. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Brown commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Brown's debts, or seeking to adjudicate Brown as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Brown or for all or any substantial part of Brown's assets, Brown agrees as follows:

    a. Brown's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Brown shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Brown's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Brown was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the Governments; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Brown.

    b. If Brown's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the

Bankruptcy Code, the Governments, at their sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Brown for the claims that would otherwise be covered by the releases provided in Paragraphs 4 and 5, above. Brown agrees that (i) any such claims, actions, or proceedings brought by the Governments are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Brown shall not argue or otherwise contend that the Governments' claims, actions, or proceedings are subject to an automatic stay; (ii) Brown shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the Governments within 365 calendar days of written notification to Brown that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on November 15, 2015; and (iii) the Governments have a valid claim against Brown in the amount of $1,200,000 and the Governments may pursue their claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

      c.      Brown acknowledges that her agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

24. Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

25. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

26. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

27. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of North Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

28. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

29. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

30. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

31. This Agreement is binding on Brown's successors, transferees, heirs, and assigns.

32. This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

33. All parties consent to the Governments' disclosure of this Agreement, and information about this Agreement, to the public.

34. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 08/25/2020 BY: *Katherine Armstrong* (Digitally signed by KATHERINE ARMSTRONG, Date: 2020.08.25 09:35:10 -04'00')

Katherine T. Armstrong
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina

DATED: 08/05/2020 BY: *Lisa M. Re*

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

## STATE OF NORTH CAROLINA

JOSHUA H. STEIN
NC Attorney General

DATED 8/10/20 BY: *F. Edward Kirby*

F. EDWARD KIRBY, JR.
Director, Medicaid Investigations Division
North Carolina Department of Justice
5505 Creedmoor Road, Ste. 300
Raleigh, NC 27612

## Codey Brown - DEFENDANT

DATED: 8/21/2020   BY: _____Codey Brown_____
                        Codey Brown

DATED: 8-24-20    BY: _____/s/ Jefferson Moors_____
                        Jefferson Moors
                        Counsel for **Codey Brown**

## David A. Majure, M.D. and Carla C. Majure - RELATORS

DATED: _____   BY: _____
                         David A. Majure, M.D.

DATED: _____   BY: _____
                         Carla C. Majure

DATED: _____   BY: _____
                         Mark A. Jones
                         Bell, Davis & Pitt, P.A.
                         Counsel for David A. Majure, M.D. and Carla C. Majure

**Codey Brown - DEFENDANT**

DATED: _____  BY: _____
                                          Codey Brown

DATED: _____  BY: _____
                                          **Jefferson Moors**
                                          Counsel for **Codey Brown**

**David A. Majure, M.D. and Carla C. Majure - RELATORS**

DATED: 8/7/2020  BY: *[signature]*
                                          David A. Majure, M.D.

DATED: 8/7/20  BY: *[signature]*
                                          Carla C. Majure

DATED: 8-7-2020  BY: *[signature]*
                                          Mark A. Jones
                                          Bell, Davis & Pitt, P.A.
                                          Counsel for David A. Majure, M.D. and Carla C. Majure

## SCHEDULE A

CODEY BROWN PAYMENT AMORTIZATION SCHEDULE

| Month | Payment | Interest 1.25% | Principal |
|---|---|---|---|
| 1 | $ 1,000.00 | $ 104.17 | $ 895.83 |
| 2 | 1,000.00 | 103.13 | 896.88 |
| 3 | 1,000.00 | 102.08 | 897.92 |
| 4 | 1,000.00 | 101.04 | 898.96 |
| 5 | 1,000.00 | 100.00 | 900.00 |
| 6 | 1,000.00 | 98.96 | 901.04 |
| 7 | 1,000.00 | 97.92 | 902.08 |
| 8 | 1,000.00 | 96.88 | 903.13 |
| 9 | 1,000.00 | 95.83 | 904.17 |
| 10 | 1,000.00 | 94.79 | 905.21 |
| 11 | 1,000.00 | 93.75 | 906.25 |
| 12 | 1,000.00 | 92.71 | 907.29 |
| 13 | 1,000.00 | 91.67 | 908.33 |
| 14 | 1,000.00 | 90.63 | 909.38 |
| 15 | 1,000.00 | 89.58 | 910.42 |
| 16 | 1,000.00 | 88.54 | 911.46 |
| 17 | 1,000.00 | 87.50 | 912.50 |
| 18 | 1,000.00 | 86.46 | 913.54 |
| 19 | 1,000.00 | 85.42 | 914.58 |
| 20 | 1,000.00 | 84.38 | 915.63 |
| 21 | 1,000.00 | 83.33 | 916.67 |
| 22 | 1,000.00 | 82.29 | 917.71 |
| 23 | 1,000.00 | 81.25 | 918.75 |
| 24 | 1,000.00 | 80.21 | 919.79 |
| 25 | 1,000.00 | 79.17 | 920.83 |
| 26 | 1,000.00 | 78.13 | 921.88 |
| 27 | 1,000.00 | 77.08 | 922.92 |
| 28 | 1,000.00 | 76.04 | 923.96 |
| 29 | 1,000.00 | 75.00 | 925.00 |
| 30 | 1,000.00 | 73.96 | 926.04 |
| 31 | 1,000.00 | 72.92 | 927.08 |
| 32 | 1,000.00 | 71.88 | 928.13 |
| 33 | 1,000.00 | 70.83 | 929.17 |
| 34 | 1,000.00 | 69.79 | 930.21 |
| 35 | 1,000.00 | 68.75 | 931.25 |
| 36 | 1,000.00 | 67.71 | 932.29 |
| 37 | 1,000.00 | 66.67 | 933.33 |
| 38 | 1,000.00 | 65.63 | 934.38 |
| 39 | 1,000.00 | 64.58 | 935.42 |
| 40 | 1,000.00 | 63.54 | 936.46 |
| 41 | 1,000.00 | 62.50 | 937.50 |
| 42 | 1,000.00 | 61.46 | 938.54 |

CODEY BROWN PAYMENT AMORTIZATION SCHEDULE

| Month | Payment | Interest 1.25% | Principal |
|---|---|---|---|
| 43 | 1,000.00 | 60.42 | 939.58 |
| 44 | 1,000.00 | 59.38 | 940.63 |
| 45 | 1,000.00 | 58.33 | 941.67 |
| 46 | 1,000.00 | 57.29 | 942.71 |
| 47 | 1,000.00 | 56.25 | 943.75 |
| 48 | 1,000.00 | 55.21 | 944.79 |
| 49 | 1,000.00 | 54.17 | 945.83 |
| 50 | 1,000.00 | 53.13 | 946.88 |
| 51 | 1,000.00 | 52.08 | 947.92 |
| 52 | 1,000.00 | 51.04 | 948.96 |
| 53 | 1,000.00 | 50.00 | 950.00 |
| 54 | 1,000.00 | 48.96 | 951.04 |
| 55 | 1,000.00 | 47.92 | 952.08 |
| 56 | 1,000.00 | 46.88 | 953.13 |
| 57 | 1,000.00 | 45.83 | 954.17 |
| 58 | 1,000.00 | 44.79 | 955.21 |
| 59 | 1,000.00 | 43.75 | 956.25 |
| 60 | 41,000.00 | 42.71 | 40,957.29 |
|  | $ 100,000.00 | $ 4,406.25 | $ 95,593.75 |