# Exhibit C

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"); the State of North Carolina, by and through the North Carolina Office of the Attorney General (collectively, the "Governments"); Defendant Harrison Frank, M.D. ("Frank"); and David A. Majure and Carla C. Majure (the "Relators"), and hereafter collectively referred to as "the Parties," through their authorized representatives.

RECITALS

A. Defendant Harrison Frank, M.D. owned a group of healthcare practices referred to as Carolina Comprehensive Health Network, PA, that had offices in multiple locations in the Western District of North Carolina as well as other locations in North Carolina.

B. On November 15, 2015, David A. Majure and Carla C. Majure filed a *qui tam* action in the United States District Court for the Western District of North Carolina captioned *United States ex rel. David A. Majure, M.D., Carla C. Majure v. Carolina Comprehensive Health Network, PA, et al.* (Case Number 15-cv-134) pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b).[1] Relators alleged, among other things, that agents of Carolina Comprehensive Health Network, PA conducted medically unnecessary diagnostic testing, urine drug tests and submitted claims for services not rendered. The United States and the State of North Carolina intervened for purposes of settlement on August 25, 2020.

C. The Governments contend that Frank submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-

---

[1] On March 25, 2016, Cynthia Smith and Melanie Childress filed a *qui tam* action in the United States District Court for the Middle District of North Carolina captioned U*nited States ex rel. Cynthia Smith, and Melanie Childress v. Carolina Comprehensive Health Network, PA, et al.* (Case Number 16-cv-234).

1395lll ("Medicare") and the Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

D. The Governments contend that they have certain civil claims against Frank arising from the submission of claims for unnecessary diagnostic procedures including: 1) positional nystagmus testing (CPT code 92542); 2) rotational axis testing (CPT codes 92546 and 92547); 3) nerve conduction testing (CPT Codes 95907, 95908, 95909, 95910, 95911, 95912 and 95913); and 4) autonomous nervous system testing (CPT codes 95921 and 95922), from May 1, 2015 through November 30, 2015. That conduct is referred to below as the "Covered Conduct."

E. This Settlement Agreement is neither an admission of liability by Frank nor a concession by the Governments that their claims are not well founded.

F. Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Defendant Harrison Frank shall pay to the Governments a total of $300,000 (the "Frank Settlement Amount"), of which $150,000 is restitution. The $300,000 is inclusive of interest at a rate of 1.25 percent per anum, the first payment shall be made on or before September 1, 2020 and shall thereafter be paid in accordance with Schedule A to this agreement.

2. Conditioned upon the Governments receiving each payment required by Schedule A of this agreement, the Governments shall make payments to Relators David and Carla Majure in the amount of 22% of the payments received from Frank under this agreement as soon as feasible after the receipt of each payment.

2

3. Defendant Frank agrees that he is jointly and severally liable for the payment of $44,758.41 to Relators David and Carla Majure pursuant to § 3730(d)(1) for their reasonable expenses and their reasonable attorney's fees and costs. The single payment of $44,758.41 is due contemporaneously with the execution of this agreement by ACH Transfer to Bell, Davis & Pitt, PA.

4. Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and conditioned upon full payment of the Settlement Amount and subject to Paragraph 23, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Frank from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5. Subject to the exceptions in Paragraph 9 (concerning excluded claims) below, and conditioned on the full payment of the Settlement Amount and subject to Paragraph 23, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the State of North Carolina releases Frank from any civil or administrative monetary claim the State of North Carolina has or may have under the North Carolina False Claims Act, N.C.G.S. §§ 1-605, *et seq.*, or the common law theories of payment by mistake, unjust enrichment, and fraud.

6. Subject to the exceptions in Paragraphs 8 and 9 below, and conditioned upon Frank's full payment of the Settlement Amount and subject to Paragraph 23, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relators, for themselves and for their heirs, successors,

attorneys, agents, and assigns, releases Frank from any civil monetary claim the Relator has on behalf of the Governments for the Covered Conduct under the False Claims Acts, 31 U.S.C. §§ 3729-3733 and N.C.G.S. §§ 1-605, *et seq.*

7. In the event that Frank fails to pay any amount as provided in Paragraph 1 within 10 business days of the date on which such payment is due, Frank shall be in default of his payment obligations (Default). In the event of such Default, OIG-HHS may exclude Frank from participating in all Federal health care programs until Frank pays the Settlement Amount and reasonable costs as set forth in Paragraph 1, above. OIG-HHS will provide written notice of any such exclusion to Frank. Frank waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Frank wishes to apply for reinstatement, Frank must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Frank will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

8. Notwithstanding the releases given in paragraphs 4, 5, and 6 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

  e.  Any liability based upon obligations created by this Agreement;

  f.  Any liability of individuals;

  g.  Any liability for failure to deliver goods or services due; and

  h.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

9. Notwithstanding the releases given in paragraphs 4, and 5, and 6 of this Agreement, or any other term of this Agreement, the following claims of the State of North Carolina are specifically reserved and are not released:

  a.  Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

  b.  Any criminal liability;

  c.  Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal healthcare programs;

  d.  Any liability to the State of North Carolina (or its agencies) for any conduct other than the Covered Conduct;

  e.  Any liability based upon obligations created by this Agreement;

  f.  Any liability of individuals;

  g.  Any liability for failure to deliver goods or services due; and

  h.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct

10. Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and N.C.G.S. § 1-609(c). Conditioned upon Relators' receipt of the payments described in Paragraph 2, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever

discharge the Governments, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730 and N.C.G.S. § 1-609, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

11. Relator, for themselves, and for their heirs, successors, attorneys, agents, and assigns, releases Frank from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) and N.C.G.S. § 1-610 for expenses or attorney's fees and costs.

12. Frank has provided sworn financial disclosure statements (Financial Statements) to the United States and the Governments have relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Frank warrants that the Financial Statements are complete, accurate, and current. If the Governments learn of asset(s) in which Frank had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the Governments learn of any misrepresentation by Frank on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $200,000 or more, the Governments may at their option: (a) rescind this Agreement and file suit or reinstate its suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Frank previously undisclosed. Frank agrees not to contest any collection action undertaken by the Governments pursuant to this provision, and immediately to pay the Governments all reasonable costs incurred in such an action, including attorney's fees and expenses.

13. In the event that the Governments, pursuant to Paragraph 10 (concerning disclosure of assets), above, opt to rescind this Agreement, Frank agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the Governments within 365 calendar days

of written notification to Frank that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on November 15, 2015.

14. Frank waives and shall not assert any defenses Frank may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States and the State of North Carolina concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

15. Frank fully and finally releases the United States and the State of North Carolina, their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Frank has asserted, could have asserted, or may assert in the future against the United States or the State of North Carolina, their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' and State of North Carolina's investigation and prosecution thereof.

16. Frank fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Frank has asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

17. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare and/or Medicaid contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier or any state payer or state contractor) related to the Covered Conduct; and Frank agrees not to resubmit to any

Medicare/Medicaid contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

18. Frank agrees to the following:

a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Frank or his present or former agents in connection with:

    (1)    the matters covered by this Agreement;

    (2)    the Governments' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    (3)    Frank's investigation, defense, and corrective actions undertaken in response to the Governments' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

    (4)    the negotiation and performance of this Agreement; and

    (5)    the payment Frank makes to the Governments pursuant to this Agreement and any payments that Frank may make to Relator, including costs and attorneys fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Frank, and Frank shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Frank to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Frank further agrees that within 90 days of the Effective Date of this Agreement he shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Frank or any of his subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Frank agrees that the Governments, at a minimum, shall be entitled to recoup from Frank any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The Governments reserves their rights to disagree with any calculations submitted by Frank or any of his subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this

9

Paragraph) on Frank or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

    d.  Nothing in this Agreement shall constitute a waiver of the rights of the Governments to audit, examine, or re-examine Frank's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

  19.  Frank agrees to cooperate fully and truthfully with the Governments' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Frank shall encourage, and agrees not to impair, the cooperation of said individuals and entities, and shall use his best efforts to make available, and encourage, the cooperation of said individuals and entities for interviews and testimony, consistent with the rights and privileges of such individuals and entities. Frank further agrees to furnish to the Governments, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in his possession, custody, or control concerning any investigation of the Covered Conduct that he has undertaken, or that has been performed by another on his behalf.

  20.  This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 21 (waiver for beneficiaries paragraph), below.

  21.  Frank agrees that he waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

  22.  Frank warrants that he has reviewed his financial situation and that he currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the Governments of the Settlement Amount. Further, the Parties

warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Frank, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Frank was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

23. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Frank commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Frank's debts, or seeking to adjudicate Frank as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Frank or for all or any substantial part of Frank's assets, Frank agrees as follows:

a. Frank's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Frank shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Frank's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Frank was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the Governments; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Frank.

b. If Frank's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Governments, at their sole option, may rescind the releases in this

Agreement and bring any civil and/or administrative claim, action, or proceeding against Frank for the claims that would otherwise be covered by the releases provided in Paragraphs 4 and 5, above. Frank agrees that (i) any such claims, actions, or proceedings brought by the Governments are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Frank shall not argue or otherwise contend that the Governments' claims, actions, or proceedings are subject to an automatic stay; (ii) Frank shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the Governments within 365 calendar days of written notification to Frank that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on November 15, 2015; and (iii) the Governments have a valid claim against Frank in the amount of $1,200,000 and the Governments may pursue their claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

      c.    Frank acknowledges that his agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

24.    Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

25.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

26.    Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

27. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of North Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

28. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

29. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

30. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

31. This Agreement is binding on Frank's successors, transferees, heirs, and assigns.

32. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

33. All parties consent to the Governments' disclosure of this Agreement, and information about this Agreement, to the public.

34. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 08/25/2020  BY: _Katherine Armstrong_ (Digitally signed by KATHERINE ARMSTRONG, Date: 2020.08.25 09:22:18 -04'00')
Katherine T. Armstrong
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina

DATED: 08/05/2020  BY: _Lisa M. Re_
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

## STATE OF NORTH CAROLINA

JOSHUA H. STEIN
NC Attorney General

DATED 8/10/20  BY: _F. Edward Kirby_
F. EDWARD KIRBY, JR.
Director, Medicaid Investigations Division
North Carolina Department of Justice
5505 Creedmoor Road, Ste. 300
Raleigh, NC 27612

**Harrison Frank - DEFENDANT**

DATED: 8/24/2020    BY: _____
                        Harrison Frank, MD

DATED: 8-24-20     BY: _____
                        Jefferson Moors
                        Counsel for Harrison Frank

**David A. Majure, M.D. and Carla C. Majure - RELATORS**

DATED: _____  BY: _____
                        David A. Majure, M.D.

DATED: _____  BY: _____
                        Carla C. Majure

DATED: _____  BY: _____
                        Mark A. Jones
                        Bell, Davis & Pitt, P.A.
                        Counsel for David A. Majure, M.D. and Carla C. Majure

### Harrison Frank - DEFENDANT

DATED: _____  BY: _____
                     Harrison Frank, MD

DATED: _____  BY: _____
                     Jefferson Moors
                     Counsel for Harrison Frank

### David A. Majure, M.D. and Carla C. Majure - RELATORS

DATED: 8/7/2020  BY: _*signature*_____
                     David A. Majure, M.D.

DATED: 8/7/20    BY: _*signature*_____
                     Carla C. Majure

DATED: 8-7-2020  BY: _*signature*_____
                     Mark A. Jones
                     Bell, Davis & Pitt, P.A.
                     Counsel for David A. Majure, M.D. and Carla C. Majure

SCHEDULE A

HARRISON FRANK PAYMENT AMORTIZATION SCHEDULE

| Month | Payment | Interest 1.25% | Principal |
|---|---|---|---|
| 1 | $ 3,000.00 | $ 312.50 | $ 2,687.50 |
| 2 | 3,000.00 | 309.38 | 2,690.63 |
| 3 | 3,000.00 | 306.25 | 2,693.75 |
| 4 | 3,000.00 | 303.13 | 2,696.88 |
| 5 | 3,000.00 | 300.00 | 2,700.00 |
| 6 | 3,000.00 | 296.88 | 2,703.13 |
| 7 | 3,000.00 | 293.75 | 2,706.25 |
| 8 | 3,000.00 | 290.63 | 2,709.38 |
| 9 | 3,000.00 | 287.50 | 2,712.50 |
| 10 | 3,000.00 | 284.38 | 2,715.63 |
| 11 | 3,000.00 | 281.25 | 2,718.75 |
| 12 | 3,000.00 | 278.13 | 2,721.88 |
| 13 | 3,000.00 | 275.00 | 2,725.00 |
| 14 | 3,000.00 | 271.88 | 2,728.13 |
| 15 | 3,000.00 | 268.75 | 2,731.25 |
| 16 | 3,000.00 | 265.63 | 2,734.38 |
| 17 | 3,000.00 | 262.50 | 2,737.50 |
| 18 | 3,000.00 | 259.38 | 2,740.63 |
| 19 | 3,000.00 | 256.25 | 2,743.75 |
| 20 | 3,000.00 | 253.13 | 2,746.88 |
| 21 | 3,000.00 | 250.00 | 2,750.00 |
| 22 | 3,000.00 | 246.88 | 2,753.13 |
| 23 | 3,000.00 | 243.75 | 2,756.25 |
| 24 | 3,000.00 | 240.63 | 2,759.38 |
| 25 | 3,000.00 | 237.50 | 2,762.50 |
| 26 | 3,000.00 | 234.38 | 2,765.63 |
| 27 | 3,000.00 | 231.25 | 2,768.75 |
| 28 | 3,000.00 | 228.13 | 2,771.88 |
| 29 | 3,000.00 | 225.00 | 2,775.00 |
| 30 | 3,000.00 | 221.88 | 2,778.13 |
| 31 | 3,000.00 | 218.75 | 2,781.25 |
| 32 | 3,000.00 | 215.63 | 2,784.38 |
| 33 | 3,000.00 | 212.50 | 2,787.50 |
| 34 | 3,000.00 | 209.38 | 2,790.63 |
| 35 | 3,000.00 | 206.25 | 2,793.75 |
| 36 | 3,000.00 | 203.13 | 2,796.88 |
| 37 | 3,000.00 | 200.00 | 2,800.00 |
| 38 | 3,000.00 | 196.88 | 2,803.13 |
| 39 | 3,000.00 | 193.75 | 2,806.25 |
| 40 | 3,000.00 | 190.63 | 2,809.38 |
| 41 | 3,000.00 | 187.50 | 2,812.50 |
| 42 | 3,000.00 | 184.38 | 2,815.63 |

HARRISON FRANK PAYMENT AMORTIZATION SCHEDULE

| Month | Payment | Interest 1.25% | Principal |
|---|---|---|---|
| 43 | 3,000.00 | 181.25 | 2,818.75 |
| 44 | 3,000.00 | 178.13 | 2,821.88 |
| 45 | 3,000.00 | 175.00 | 2,825.00 |
| 46 | 3,000.00 | 171.88 | 2,828.13 |
| 47 | 3,000.00 | 168.75 | 2,831.25 |
| 48 | 3,000.00 | 165.63 | 2,834.38 |
| 49 | 3,000.00 | 162.50 | 2,837.50 |
| 50 | 3,000.00 | 159.38 | 2,840.63 |
| 51 | 3,000.00 | 156.25 | 2,843.75 |
| 52 | 3,000.00 | 153.13 | 2,846.88 |
| 53 | 3,000.00 | 150.00 | 2,850.00 |
| 54 | 3,000.00 | 146.88 | 2,853.13 |
| 55 | 3,000.00 | 143.75 | 2,856.25 |
| 56 | 3,000.00 | 140.63 | 2,859.38 |
| 57 | 3,000.00 | 137.50 | 2,862.50 |
| 58 | 3,000.00 | 134.38 | 2,865.63 |
| 59 | 3,000.00 | 131.25 | 2,868.75 |
| 60 | 123,000.00 | 128.13 | 122,871.88 |
|  | $ 300,000.00 | $ 13,218.75 | $ 286,781.25 |